CLOSED,INTERPRETER

# U.S. District Court [LIVE]
## Western District of Texas (Austin)
## CRIMINAL DOCKET FOR CASE #: 1:22−mj−00665−SH−1

Case title: USA v. Estrada−Campuzano

Date Filed: 07/28/2022

Other court case number:  22−804M−NJ Eastern District of Wisconsin

---

Assigned to: Judge Susan Hightower

**Defendant (1)**

| | | |
|---|---|---|
| **Jesus Estrada−Campuzano** | represented by | **Duty Pub. Defender−Austin** |
| | | Office of the Federal Public Defender |
| | | Austin Division |
| | | 504 Lavaca St., Suite 960 |
| | | Austin, TX 78701 |
| | | (512) 916−5025 |
| | | Fax: (512) 916−5035 |
| | | Email: norma_g_medrano@fd.org |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Public Defender or Community* |
| | | *Defender Appointment* |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| 21:841A=ND.F− Possession with intent to distribute, and distribution of a controlled substance; 21:846 | |

Conspiracy to distribute 500g of
cocaine

---

**Plaintiff**

**USA**                                        represented by   **Daniel M. Castillo**
U.S. Attorney's Office
903 San Jacinto Blvd.
Suite 334
Austin, TX 78701
(512) 916−5858
Fax: 512/916−5854
Email: daniel.castillo@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/28/2022 | 1 | | Arrest (Rule 5/Rule 32.1) of Jesus Estrada−Campuzano (lt) (Entered: 07/28/2022) |
| 07/28/2022 | 2 | | MOTION to Detain Defendant without Bond by USA as to Jesus Estrada−Campuzano. (Castillo, Daniel) (Entered: 07/28/2022) |
| 07/28/2022 | 3 | | Minute Entry for proceedings held before Judge Susan Hightower:Initial Appearance in Rule 5(c)(3)/ Rule 32.1 Proceedings as to Jesus Estrada−Campuzano held on 7/28/2022. SPANISH Language Interpreter required as to Jesus Estrada−Campuzano (Minute entry documents are not available electronically.) (Court Reporter FTR Gold − ERO.) (lt) (Entered: 07/28/2022) |
| 07/28/2022 | 4 | | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Jesus Estrada−Campuzano. Signed by Judge Susan Hightower. (lt) (Entered: 07/28/2022) |
| 07/28/2022 | 5 | | Order Regarding Financial Status as to Jesus Estrada−Campuzano. Signed by Judge Susan Hightower. (lt) (Entered: 07/28/2022) |
| 07/28/2022 | 6 | | ORDER OF TEMPORARY DETENTION: as to Jesus Estrada−Campuzano Detention Hearing set for 8/11/2022 at 10:00 AM before Judge Mark Lane, Preliminary Hearing set for 8/11/2022 at 10:00 AM before Judge Mark Lane. Signed by Judge Susan Hightower. (lt) (Entered: 07/28/2022) |
| 07/28/2022 | 7 | | Report of Proceedings Under Rules 5(c)(3) and 5.1 and ORDER as to Jesus Estrada−Campuzano. Signed by Judge Susan Hightower. (lt) (Entered: 07/28/2022) |
| 07/29/2022 | 8 | | WAIVER − Rule 5/Rule 32.1 as to Jesus Estrada−Campuzano. (afd) (Entered: 08/01/2022) |
| 07/29/2022 | 9 | | COMMITMENT TO ANOTHER DISTRICT as to Jesus Estrada−Campuzano. Defendant committed to Eastern District of Wisconsin, Milwaukee Division.. Signed by Judge Susan Hightower. (afd) (Entered: 08/01/2022) |

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Eastern District of Wisconsin

**FILED**

July 28, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Jesus Estrada-CAMPUZANO (DOB xx/xx/1990) | ) |
| & | ) |
| Rodolfo Garcia-MORALES (DOB xx/xx/1987) | ) |
| | ) |
| | ) |

BY: _____**LRT**_____
DEPUTY

Case No.  22-804M(NJ)

AU:  1:22-MJ-00665-SH

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    Jan. 13 & 28, Feb. 3 & 16, 2021    in the county of    Milwaukee    in the

Eastern    District of    Wisconsin    , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) | Possession with intent to distribute, and distribution of a controlled substance. |
| 21 U.S.C. § 846 | Conspiracy to distribute 500g of cocaine. |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

NICHOLAS
LANCASTER

Digitally signed by NICHOLAS
LANCASTER
Date: 2022.02.04 08:56:12 -06'00'

_Complainant's signature_

DEA SA Nicholas J. Lancaster

_Printed name and title_

Sworn via telephone; transmitted via email
pursuant to Fed. R. Crim. 4.1

Date:    2/4/2022

_Judge's signature_

City and state:    Milwaukee, Wisconsin

Hon. Nancy Joseph, U.S. Magistrate Judge

_Printed name and title_

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
## AND ARREST WARRANT

I, Nicholas J. Lancaster, being first duly sworn, hereby depose and state as follows:

## I.    AGENT BACKGROUND AND INFORMATION

1.    I am a Special Agent with the Drug Enforcement Administration ("DEA").  I have been so employed since September 2015.  Prior to my employment with DEA, I was employed as a federal law enforcement officer with the United States Secret Service for approximately four years.

2.    As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.  I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

3.    I have received training in the area of narcotics investigations, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises.  I have participated in numerous investigations involving violations of narcotics laws.

4.    I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws.  These warrants involved the search of locations including: residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers.  Evidence searched for and recovered in these locations has included controlled

substances, records pertaining to the expenditures and profits realized from narcotics trafficking, monetary instruments and various assets that were purchased with the proceeds of the drug trafficking.

5.    This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

6.    I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

7.    Because this affidavit is submitted for the limited purpose of securing a complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

8.    I am submitting this affidavit in support of a Federal Criminal Complaint for Jesus Estrada-CAMPUZANO (DOB 10/02/1990), and Rodolfo Garcia-MORALES (DOB 01/19/1987), in the State and Eastern District of Wisconsin. As will be shown below, there is probable cause to believe that on or about  January 13, 2021/ January 28, 2021/ February 3, 2021/ February 16, 2021, MORALES and CAMPUZANO committed the crimes of Possession with Intent to Distribute and Distribution of a controlled substance, that is cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and/or the crime

2

of Conspiracy to Distribute a controlled substance, that is cocaine, a Schedule II Controlled Substance,  in violation of Title 21 United States Code, Section 846.


## II.    PROBABLE CAUSE

9.    During the beginning of 2021, the Milwaukee DEA utilized a confidential source (hereinafter referred to as "CS") who had information on a subject that distributed kilograms of cocaine.  The subject was identified as Rodolfo Garcia MORALES (hereinafter referred to as "MORALES").  Over the next several weeks, the CS (under the direction of the law enforcement) negotiated with MORALES for the purchase of multiple ounces and kilograms of cocaine.  During the negotiations, MORALES introduced the CS to his associate, Jesus Estrada CAMPUZANO. MORALES and CAMPUZANO would typically travel together to sell cocaine to the CS, with one exception where MORALES alone delivered cocaine to the CS. Approximately 451 grams were purchased or seized from MORALES and CAMPUZANO combined, and an additional approximate 252 grams was witnessed by the CS to be in the possession of MORALES and CAMPUZANO, as further detailed below.

10.    I and other law enforcement officers believe CS to be reliable because he/she has provided intelligence concerning drug trafficking activities of MORALES and other drug traffickers that have been corroborated through investigations and enforcement operations.  The CS made statements against his/her own penal interests.  The CS has a pending federal case in which he/she is charged with drug trafficking conspiracy and felon in possession of firearms. Although no promises have been made to the CS, he/she is hoping to receive credit for cooperation in the form of a reduction in his/her sentence.

11.     On January 6, 2021, the CS contacted law enforcement to report that MORALES was offering to sell the CS kilograms of cocaine in Milwaukee, WI.  The CS did not know the true identity of MORALES at this time, and referred to MORALES as "Portillo's cousin." The CS informed investigators that "Portillo's cousin" would be stopping by the CS's residence within the next hour.  The CS and "Portillo's cousin" would be meeting to discuss a future cocaine purchase and further negotiations as instructed by investigators. Investigators established surveillance of the meeting and observed MORALES arrive in a 2017 Toyota Rav4 with Texas license plate NPD1659 arrived at the residence.  A check through Texas Department of Transportation records showed the registered owner of the vehicle to be Jesus Estrada CAMPUZANO out of Houston Texas.

12.     On January 13, 2021, law enforcement directed to the CS to contact MORALES and have one ounce cocaine fronted to the CS, with the expectation that the CS would pay MORALES for the cocaine the following day. On 1/13/2021, at approximately 1:00 pm, case agents, met with the CS at the DEA Milwaukee District Office (MDO).  The CS reported that he/she had recently talked to MORALES on phone number 414-366-2094 and they had agreed to meet at a local Milwaukee supermarket, for one ounce of cocaine to be fronted to the CS. The CS reported that MORALES said he was coming from Waukesha, WI. Case agents searched the CS for contraband with negative results.  Case agents searched the CS vehicle for contraband with negative results.  At approximately 1:18pm, the CS departed the MDO en route for the supermarket. Case agents followed the CS to the meet location. Case agents installed covert surveillance equipment in the CS vehicle. Case agents followed the CS vehicle directly to the supermarket parking lot at approximately 1:25pm.  A DEA air wing surveillance unit conducted aerial surveillance, and transmitted via radio relevant information regarding the movements of the

4

CS and MORALES. The ground surveillance team listened in to a live stream audio of the sounds and conversations around the CS.

13.     At approximately 1:25pm, DEA surveillance reported that MORALES was standing out front of the Red Rav4 and motioning to the CS vehicle as the CS drove through the lot. The CS vehicle pulled up to MORALES and MORALES entered the CS vehicle passenger side and the CS parked next to the Red Rav4. Video of MORALES inside the CS vehicle was captured for evidence. Via the live audio, ground surveillance overheard a conversation ensue between the CS and MORALES in Spanish. The CS and MORALES negotiated possible kilogram cocaine deals for the future, then MORALES had the CS  exit the CS vehicle and get in to the red Rav4 so they could talk to MORALES' associate who was waiting in the passenger seat of the Rav4 (later identified as CAMPUZANO). At approximately 1:28 pm, DEA surveillance observed the CS and MORALES exiting the CS vehicle. The CS entered the back seat of the Red Rav4, and MORALES entered the front driver's side of the Rav4. Investigators listened to live audio as a conversation took place between the CS, MORALES, and CAMPUZANO.  At approximately 1:30 pm, the CS exited the red Rav4 and went directly back to the CS vehicle. Case agents followed the CS back to the MDO.  DEA surveillance followed the red Rav4 and observed the vehicle parking at 1724B S. 6th Street.

14.     At the MDO, the CS transferred a clear baggy containing a white chunky substance suspected to be cocaine to case agents.  The CS did not have the suspected cocaine on his/her person or in his/her vehicle prior to meeting with MORALES, and the CS did not meet with any other persons while under DEA surveillance.  Case agents searched the CS and the CS vehicle for contraband with negative results. At the MDO, the suspected cocaine was weighed to

5

8

be 29.3 grams.  The suspected cocaine tested positive for cocaine with a TruNarc electronic testing device and was sent to the North Central Laboratory for analysis.

15.     Case agents debriefed the CS after the controlled buy operation in which the cocaine was fronted to the CS. The CS related to case agents that he/she departed the MDO and stopped near W. Burnham St. and W. Electric Ave to call MORALES to say he/she was en route. Then the CS continued driving toward the supermarket when the CS received an incoming call from MORALES using a new phone, #254-523-5476. MORALES told the CS he had arrived at the supermarket and was waiting.  The CS then recalled he/she stopped short of the final destination so case agents could approach the CS's vehicle and plant a  covert surveillance device. The CS said he/she then drove straight to the supermarket parking lot and had not met or interacted with any person other than case agents up until the moment the CS met MORALES. The CS does not know MORALES' first or last name, and stated "he was standing in the parking lot near his car and I pulled up to him and he jumped in my car." The CS stated "he told me he had a guy coming in town with 5 kilo's per week for $45,000 - $46,000 USC/ per kilogram, and we talked about the ounce of cocaine being fronted, then he wanted me to go to his car to meet the other guy, I got in the back seat of his car and he got in the driver's seat, and there was a guy in the passenger seat and his name was Jesus" (CAMPUZANO).  Case agents asked what kind of car the subjects were driving, and the CS stated is was a "little red SUV."  The CS described Jesus (CAMPUZANO) as approximately "five foot six, 180lbs, age 30's with a clean face, yellow teeth, straight from Mexico."  The CS said they discussed future deals for kilograms of cocaine and having a safe place to do it where everyone was comfortable, and that Jesus (CAMPUZANO) said he had 28 ounces left in his current stash. The CS said "the driver (MORALES) handed over the ounce of cocaine."

16.    On January 14, 2021, investigators coordinated for the DEA CS to pay back MORALES for the previously fronted ounce of cocaine, with $1,200 OAF.  On 1/14/2021, at approximately 9:30 am, case agents met with the CS at the MDO.  The CS reported that he/she had recently talked to MORALES on phone number 254-532-5476 and they had agreed to meet at 10:00 am so the CS could pay MORALES. The CS reported that MORALES said he was coming from Waukesha, WI.  Case agents searched the CS and CS vehicle for contraband with negative results.  Case agents asked the CS to arrange the meeting to take place at a local Milwaukee supermarket. Case agents equipped the CS with a live audio streaming device so that surveillance could listen to the CS's conversations, and with an audio recorder so that the CS's conversations could be memorialized as evidence.  At approximately 9:59 am, the CS departed from the MDO, and was followed by case agents.  A short distance from the MDO the CS pulled over and placed a call to the MORALES.  The CS and MORALES agreed to meet in the parking lot of the supermarket. Once the location was agreed upon the CS departed and drove directly to the supermarket.

17.    At approximately 10:03 am, the CS entered the supermarket parking lot and surveillance observed the CS park in the middle of the parking lot.  At approximately 10:13 am, surveillance observed a red Toyota Rav4 bearing a Texas license plate of NDP1659 turn into the supermarket parking lot, and park next to the CS vehicle. At approximately 10:14 am, surveillance observed the CS enter the back seat of the red Rav4. The CS had a conversation with MORALES and CAMPUZANO negotiating kilograms of cocaine for $45,000 per kilogram. At approximately 10:17 am, surveillance observed the CS exit the Rav4.  The CS was observed standing at the driver's window of the Rav4 speaking with MORALES, then the CS returned to the CS vehicle. The DEA surveillance team followed the Rav4 to a parking area behind 1724B S. 6th Street.

7

18.     Case agents followed the CS back to the MDO. The CS did not make any stops and did not meet with anyone after leaving the supermarket parking lot.  Once at the MDO, case agents searched the CS and CS vehicle for contraband with negative results. Case agents debriefed the CS immediately after the controlled payment operation on 1/14/21. Case agents asked the CS to recall his movements and observations since departing the MDO to meet with MORALES. The CS stated he/she departed the MDO and stopped near W. Burnham St. and W. Electric Ave to call MORALES to say he/she was heading to the supermarket at 35th and W. Burnham Ave. for their meeting. The CS said he/she drove straight to the meeting location without meeting or interacting with anyone else and waited in the parking lot until he/she met MORALES and CAMPUZANO. The CS stated when he/she saw MORALES' red Toyota Rav4 he/she got out of the CS vehicle and got in the back seat of the target vehicle. The CS observed MORALES in the driver's seat and CAMPUZANO in the passenger seat.  The CS reported handing the $1,200 OAF to MORALES, then the trio had a discussion about cocaine deals and pricing.  The CS reported that MORALES and CAMPUZONO have 21 ounces of cocaine left, but there are three kilograms at an undisclosed location 3 hours away and it would be a 6 hour drive round trip. CAMPUZANO told the CS as soon as he can sell everything in his current stash he plans to go back to Texas to resupply. CAMPUZANO told the CS the price of each kilogram of cocaine is $45,000. The CS said as he/she exited the target vehicle he/she walked up to the passenger side window to say some parting words to CAMPUZANO in order to get a clear view of CAMPUZANO's face, then the CS went straight to the CS vehicle and traveled directly back to the MDO without meeting or interacting with any persons until the CS met with DEA investigators.

19.     On January 28, 2021, at approximately 11:30am, case agents met with the CS at the MDO.  The CS reported that he/she had recently talked to MORALES on phone number 254-

8

532-5476 and they had agreed to meet at 12:00 pm, for MORALES to sell the CS two ounces of cocaine. Case agents searched the CS and CS vehicle for contraband with negative results.   The CS confirmed that he/she had arrange for the meeting to occur at the local Milwaukee supermarket. Case agents transferred $2,400 official advanced funds (OAF) to the CS, then equipped the CS with a live audio streaming device so that surveillance could listen to the CS's conversations, and with an audio/video recorder so that the CS's conversations could be memorialized as evidence. At approximately 11:52pm, the CS departed the MDO. At approximately 11:45am, a DEA surveillance team established observational positions around the supermarket. Case agents followed the CS from the MDO, to the Supermarket.  The CS drove directly to the meeting location and did not stop or interact with any other subjects.

20.     At approximately 11:55am, surveillance observed the CS vehicle park in the supermarket parking lot and observed that the CS did not have any interactions with any subjects while waiting for MORALES to arrive. The CS, and the surveillance team waited approximately one hour for MORALES to arrive. During this delay, case agents could hear via the live audio recording that the CS called MORALES multiple times to expedite the operation and on one of the calls MORALES relayed that he was in route from 6th Street. At approximately 12:52pm, surveillance observed MORALES' blue 2002 Chevrolet Trail Blazer, WI: ACM7522 (Target Vehicle) arrive in the supermarket parking lot. Surveillance observed that MORALES was riding in the front passenger seat of the target vehicle, while an unidentified female was driving. The target vehicle parked next to the CS vehicle on the CS's driver's side. Surveillance observed MORALES exit the target vehicle and enter the passenger side of the CS vehicle. The surveillance team could hear, via live audio stream from the CS vehicle, a conversation take place between the CS and MORALES in Spanish.  The conversation was interpreted and relayed to the

9

case agents that the conversation was about future drug deals with a cocaine source of supply in Rockford, IL. At approximately 12:54 pm, surveillance observed MORALES exit the CS vehicle and return to the target vehicle. The CS departed the area and case agents followed the CS back to the MDO.  The DEA surveillance team followed the target vehicle, which departed the parking lot and was last seen by surveillance units heading southbound on S. Whitnall Ave., from Layton Ave. in Cudahy, WI.

21.     Case agents followed the CS to MDO. The CS transferred approximately two ounces of cocaine over to case agents. Based on the initial search, and surveillance, investigators know that the CS did not have these drugs in his/her possession prior to meeting with MORALES.  Case agents searched the CS and CS vehicle for contraband with negative results.  At the MDO, the suspected cocaine was weighed to be 54.4 grams.  The suspected cocaine tested positive for cocaine with a TruNarc electronic testing device and was sent to the North Central Laboratory for analysis. Case agents debriefed the CS immediately after the controlled buy operation on 1/28/21. Case agents asked the CS to recall his movements and observations since departing the MDO to meet with MORALES. The CS stated he/she departed the MDO and drove straight to the supermarket at 35th and W. Burnham Ave. and did not meet or interact with anyone on the way. The CS said he/she waited in the parking lot for about an hour for MORALES to show up. The CS said while he/she was waiting the CS called and texted MORALES but did not interact with any people and stayed inside the CS vehicle. The CS stated when he/she saw MORALES' blue Chevrolet Trailblazer parking next to the CS vehicle, MORALES got out of the passenger side of the Trailblazer and got in to the CS vehicle. The CS recalled MORALES was wearing a baseball hat and a coat. The CS said MORALES handed over the cocaine first, then the CS handed MORALES the money. The CS recalled MORALES talked about a cocaine supplier

based in Rockford, IL that they could go to purchase a kilogram of cocaine. The CS said MORALES returned to his Trailblazer and the CS departed the area and headed straight back to the MDO without meeting or interacting with any persons until the CS met with DEA investigators.

22.     On February 2, 2021, case agents met with the CS. The CS informed investigators that he/she could meet with MORALES to discuss a future 1/4 kilogram cocaine transaction. Investigators refer to such a meeting between a CS and a target subject as a "dry meet", as no money and no drugs are exchanged. At approximately 12:00pm, case agents equipped the CS with a covert audio recording device and followed the CS to the pre-established supermarket parking lot in Milwaukee, WI. A DEA surveillance team was established in the area. The CS called MORALES at 254-523-5476. At approximately 12:30pm, surveillance observed MORALES' blue 2002 Chevrolet Trailblazer, WI: ACM7522 (target vehicle), park one parking spot north of the CS vehicle. MORALES exited the driver's side, and Jesus Estrada CAMPUZANO exited the passenger side. Surveillance observed both subjects enter the CS vehicle. A conversation between the subjects and the CS took place inside the CS vehicle and was recorded by the covert recording device. In summary, the CS asked for ¼ kilogram of cocaine and they arranged a deal for the following morning.

23.     On February 3, 2021, at approximately 11:00am, case agents met with the CS at the MDO.  The CS reported that he/she had recently talked to MORALES on phone number 254-523-5476 to confirm the deal was still on.  (**AGENT NOTE:** a subpoena return from T-Mobile for the phone used by MORALES, 254-523-5476, lists the account subscriber as "Jesus Estrada". Investigators suspect Jesus Estrada CAMPUZANO is allowing MORALES to use a phone/service plan in CAMPUZANO's name to coordinate drug transactions.) The CS relayed that

11

14

MORALES had agreed to meet at 11:30 am, at a local Milwaukee supermarket, for MORALES to

sell the CS 10 ounces of cocaine. Case agents searched the CS and CS vehicle for contraband with

negative results.  Case agents transferred $14,000 official advanced funds (OAF) to the CS, then

equipped the CS with a live audio streaming device so that surveillance could listen to the CS's

conversations, and with an audio/video devices so that the CS's conversations could be

memorialized as evidence. At approximately 11:22pm, the CS departed the MDO in route for

supermarket, followed by case agents. A DEA surveillance team established positions of

observation around supermarket at approximately 11:00am. At approximately 11:10am,

surveillance observed the target vehicle (2002 blue Chevy Trailblazer, WI: ACM7522) arrive in

the supermarket parking lot. Surveillance identified CAMPUZANO exit the driver position of the

target vehicle and walked towards the dumpsters and return to the driver's seat of the target vehicle.

At approximately 11:27 am, the CS arrived in the supermarket parking lot and parked on the

driver's side of the target vehicle. The CS exited the CS vehicle and got inside the rear driver's

side of the target vehicle. Case agents and the surveillance team could hear a conversation take

place between the CS and the subjects inside the target vehicle, via a live audio streaming device.

A DEA agent interpreted the conversation for pertinent information regarding the CS's safety and

investigative leads.

24.     At approximately 11:33am, surveillance observed the CS was returning to the CS

vehicle and departing the parking lot. Case agents took over surveillance of the CS and followed

the CS back to the MDO. The surveillance team stayed with the target vehicle. While driving

back to the MDO, the CS telephoned case agents, and reported the CS had

successfully purchased cocaine and there was an additional nine ounces of cocaine on the

backseat of the target vehicle for another customer. At approximately 11:34am, the target vehicle

departed the parking lot. Surveillance observed the vehicle contained three occupants (this observation is also corroborated by CS statements). The surveillance team followed the target vehicle to a back-alley parking area between S. 5th and S. 6th Streets, just south of Mitchell Street in Milwaukee. Surveillance observed MORALES and CAMPUZANO exit the target vehicle, approach the back door of 1723 S. 5th St. and knock on the back door and wait on the back porch for a few minutes. The suspects received no answer, and returned to the target vehicle. The target vehicle moved east through the parking area towards 1724B S. 6th Street.  MORALES, CAMPUZANO, and an unidentified male exited the target vehicle outside 1724B S. 6th Street. Surveillance observed MORALES and CAMPUZANO go inside the door on the west side of 1724B S. 6th Street.

25.     While returning to the MDO, the CS did not make any stops and did not meet with anyone after meeting MORALES in the Pete's parking lot.  Once at the MDO, the CS transferred approximately 10 ounces of cocaine to case agents. Based on the initial search, and surveillance, investigators know that the CS did not have these drugs in his/her possession prior to meeting with MORALES. Case agents searched the CS and CS vehicle for contraband with negative results; the CS no longer had the OAF. Case agents debriefed the CS immediately after the operation, asking the CS to recall his/her movements and observations since departing the MDO to meet with MORALES.     The CS stated he/she departed the MDO and drove straight to the Pete's Fruit Market on Greenfield Ave, and did not meet or interact with anyone on the way. The CS said, when he/she arrived in the parking lot the CS observed CAMPUZANO walking from the direction of the dumpsters at the back of the parking lot, towards the blue Chevy Trailblazer, and CAMPUZANO entered the driver's seat. The CS then parked next to the Chevy trailblazer and entered the rear driver's side of the Trailblazer. The CS reported that MORALES

was in the front passenger seat, and an unidentified male was in the back passenger side seat. The CS recalled the conversation that took place inside the Chevy Trailblazer with the three subjects. The CS recalled that they told the CS the cocaine is very good quality and they had cooked an ounce of it which had yielded 29 grams of crack, meaning the product is very pure. The subjects related that they had sold the cocaine to "Bull", and he liked the product. The CS said MORALES handed over the cocaine to the CS, and then the CS handed over the $14,000 OAF to MORALES; then MORALES divided up the money amongst himself, CAMPUZANO, and the UM to count it. All three subjects counted their stack of money and then they told each other how much they had and added up the total to make sure all the money was there. The CS stated he/she saw an additional 9 ounces of cocaine in a bag, sitting in plain view on the middle seat of the back row, between the CS and the UM. The CS stated he/she was momentarily confused because he/she thought he/she had already put the cocaine in his jacket, but thinking the bag of cocaine on the seat was the CS's, picked it up to look at it, then realized the CS did already have the purchased cocaine, and this bag was presumably for another customer. The CS put returned the second bag of cocaine to the middle seat, and exchanged parting words with the subjects. The CS said he/she returned to the CS vehicle and departed the area and headed straight back to the MDO without meeting or interacting with any persons until the CS met with DEA investigators.

26.     Case agents weighed the suspected cocaine in at 298.5 grams, and tested the exhibit for cocaine with a Modified Scott Reagent cocaine/crack presumptive field test with positive results for the presence of cocaine. The evidence has been transferred the North Central Lab for further processing.

27.     On February 16, 2021, case agents met with the CS and directed the CS to meet contact MORALES to order 1 kilogram of cocaine. At approximately 10:30am, MORALES informed the CS that MORALES had possession of the cocaine and would deliver it to the CS soon. Investigators observed the GPS tracker on the target vehicle was traveling from Waukesha, in to Milwaukee. Investigators scrambled a surveillance team to observe the target vehicle based on the GPS location. Surveillance observed CAMPUZANO (driver) and MORALES (passenger) in the target vehicle (2002 blue Chevrolet Trailblazer, ACM7522). At approximately 10:45, the target vehicle was subject to a traffic stop by Milwaukee PD due a bad break light and failure to obey stop sign. An MPD k-9 searched the vehicle, and a rear seat passenger identified as Roxcell VAZQUEZ 11/5/1996, was placed under arrest, in possession of approximately 70 grams of cocaine.   VAZQUEZ was transported to MPD District 2 for booking. After the booking process, MPD Police Officers interviewed VAZQUEZ in the District 2 interview room. The interview was audio and video recorded. VAZQUEZ was advised of her constitutional rights per the PM-2 card. VAZQUEZ stated she understood her rights and was willing to answer questions without a lawyer present.  VAZQUEZ stated she believed they were driving to Milwaukee for Mexican style bread, and when they were pulled over by police, CAMPUZANO handed VAZQUEZ several plastic bags and told her to hide them. VAZQUEZ assumed it was cocaine in the bags and hit them in her bra.

## III.    CONCLUSION

28.     Based on the above information, I submit that there is probable cause to believe that on or about January 13, 2021/ January 28, 2021/ February 3, 2021/ February 16, 2021, Rodolfo Garcia-MORALES (DOB 01/19/1987), and Jesus Estrada-CAMPUZANO (DOB 10/02/1990) conspired to possess with intent to distribute and distributed a controlled substance,

15

that is cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B).

16

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   22-804M(NJ) |
| Jesus Estrada-CAMPUZANO | ) | |
| (DOB xx/xx/1990) | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

       **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    Jesus Estrada-CAMPUZANO                                         ,
who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment      ❑ Superseding Indictment      ❑ Information      ❑ Superseding Information      ☑ Complaint
❑ Probation Violation Petition      ❑ Supervised Release Violation Petition      ❑ Violation Notice      ❑ Order of the Court

This offense is briefly described as follows:

     See Attached Affidavit.

Date:    2/4/2022                                                           
                                               *Issuing officer's signature*

City and state:    Milwaukee, Wisconsin               Nancy Joseph, U.S. Magistrate Judge
                                                         *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
| at *(city and state)* _____ . |
| |
| Date: _____                         _____ |
|                                            *Arresting officer's signature* |
| |
|                                            *Printed name and title* |

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

**UNITED STATES OF AMERICA**
**Plaintiff**

**v**

**JESUS ESTRADA-CAMPUZANO**
**Defendant**

**CASE NO.: 1-22-MJ-00665-SH**

## MOTION FOR DETENTION OF DEFENDANT

The government seeks pretrial detention under Title 18, United States Code, Section 3142, et seq., and would show the Court the following:

1. The pending case involves:

[  ] (a) A crime of violence; 18 U.S.C. § 3142(f)(1)(A).

[  ] (b) An offense for which the maximum sentence is life imprisonment or death; 18 U.S.C. § 3142(f)(1)(B).

[X] (c) An offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act or the Maritime Drug Law Enforcement Act; 18 U.S.C. § 3142(f)(1)(C).

[  ] (d) A felony committed after the Defendant had been convicted of two or more prior offenses described in Title 18, United States Code, Section 3142(f)(l)(A)-(C) or comparable state or local offenses.

[  ] (e) A felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device or any other dangerous weapon or involves the failure to register under section 2250 of title 18, United States Code; 18 U.S.C. § 3142(f)(1)(E).

[X] (f) A serious risk that the Defendant will flee; 18 U.S.C. § 3142(f)(2)(A).

[  ] (g) A serious risk that the person will obstruct or attempt to obstruct justice, or attempt to threaten, injure or intimidate a prospective witness or juror; 18 U.S.C. § 3142(f)(2)(B).

[  ]  (h)  An offense committed by the Defendant while released pending trial or sentence, or while on probation or parole and the person may flee and/or poses a danger to another person and/or the community requiring an initial 10-day detention pursuant to 18 U.S.C. § 3142(d).

[ **X** ]  (i)  An offense committed by the above named defendant who is not a citizen of the United States or lawfully admitted for permanent residence and the person may flee requiring an initial 10 day detention under the provisions of 18 U.S.C. § 3142(d).

2.  No condition or combination of conditions will:

[**X**]  (a)  Reasonably assure the appearance of the person as required.

[**X**]  (b)  Reasonably assure the safety of the community or any other person.

3.  The United States may advocate additional reasons for detention other than those indicated above as the investigation proceeds and new information becomes available.

4.  Pursuant to 18 U.S.C. § 3142(f) the United States moves that the detention hearing be continued for **TEN (10)** days so that the United States can prepare for said hearing.

5.  The Government requests that the Defendant be held without bond.

Respectfully submitted,

ASHLEY C. HOFF
UNITED STATES ATTORNEY

By:  /s/ *Daniel M. Castillo*

DANIEL M. CASTILLO
Assistant U. S. Attorney
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
Office  (512) 916-5858
Fax      (512) 916 5854

## CERTIFICATE OF SERVICE

I certify that on July 28, 2022, a copy of the foregoing instrument was electronically filed

with the Clerk of the Court using the CM/ECF System.

By:     /s/ *Daniel M. Castillo*
           DANIEL M. CASTILLO
           Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| United States of America | Criminal No.: **AU:22-M -00665(1)** |
| v. | Date Appeared: July 28, 2022 |
| (1) Jesus Estrada-Campuzano | Time: 4:37-4:46 PM (9 minutes) |
| *Defendant* | |

# INITIAL APPEARANCE

1. Complaint Filed

   February 4, 2022
   *Date*

   Warrant Issued:  February 4, 2022
   *Date*

   Arrested   July 28, 2022
   *Date*

   Agency:   USMS
   *Agency*

2. COURT PERSONNEL:

   | | |
   |---|---|
   | U.S. Magistrate Judge: | SUSAN HIGHTOWER |
   | Courtroom Deputy: | James Ferrell |
   | Pretrial Officer: | N/A |
   | Interpreter: | Lorena Devlyn |

3. APPEARANCES:

   AUSA:  N/A
   DEFT ATTY: N/A

4. PROCEEDINGS:

   | | | | Gender | Male |
   |---|---|---|---|---|
   | a. | Age | Education | | |
   | b. | Defendant understands proceedings and is mentally competent. | | | Y |
   | c. | Defendant is informed of constitutional rights. | | | Y |
   | d. | Defendant understands charges. | | | Y |
   | e. | If charged on complaint, Defendant informed of right to Preliminary Hearing. | | | Y |
   | f. | Defendant informed of right to legal counsel. | | | Y |

         1)   Defendant waives counsel.

         2)   Defendant intends to retain counsel.

         3)   Defendant has retained counsel:

                     Phone No.:

   X   4)   Defendant requests appointment of counsel.

           X    Defendant HAS NOT completed the CJA23 financial affidavit.

             X    Court will appoint counsel in the interest of justice based on defendant's verbal accounting of current financial status.

                 Defendant HAS completed the CJA23 financial affidavit and the Court will appoint counsel because:

                     The defendant is indigent at this time.

                     Even though the defendant is not indigent, counsel will be appointed in the interests of justice.

               The Court finds that the defendant is NOT eligible and denies request.

PROCEEDING MEMO - INITIAL APPEARANCE
In Re:  (1) Jesus Estrada-Campuzano
Page 2 of 2 Pages

g.      PRE-TRIAL RELEASE:
        <u>X</u>  1)   The Government makes ☐ oral   or   ☒ written motion for detention under 18 USC 3142.
                      Court sets detention  hearing for _____ <u>Tuesday, August 11 at 10am before Judge Lane</u>
        _____  2)   The Court sua sponte moves for detention.  The detention hearing is set for
                                                                                        at
        _____  3)   The Defendant ☐ is released   ☐ will be released on the following conditions:
                      Bond is set at $ _____

                      *(Check the following that apply:)*

                      _____ unsecured                    _____ unsecured with 10% posted to the registry
                      _____ cash or corporate            _____ additional sureties
                      _____ 3rd party custodian          _____ as set forth in Order Setting Conditions of Release

h.      Temporary Detention issued       July 28, 2022      Preliminary Hearing set for      Tuesday, August 11 at 10am
                                                                                              before Judge Lane

i.      REMOVAL PROCEEDINGS:
        The Defendant is advised of Rule 20 and Rule 5 rights and ....
        _____  1)   The Defendant waives Rule 5(c)(3)(D)(ii) and is detained pending removal to the
                      _____. Detention hearing is to be held in that district.
        _____  2)   The Defendant waives Rule 5 and is released on bond.  The Defendant is ordered to appear in the
                      _____ ☐ on _____
                      or ☐ when notified by the prosecuting district.
        _____  3)   The Defendant is ☐ detained   ☐ released on bond and requests Rule 5(c)(3) hearing.  The
                      Court sets hearing for _____

j.      Other:   **IDENTITY HEARING ORALLY WAIVED.**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| vs. | § | NO:   AU:22-M -00665(1) |
| | § | |
| (1) Jesus Estrada-Campuzano | § | |

## ORDER APPOINTING FEDERAL PUBLIC DEFENDER

Consistent with the Court's Order Regarding Financial Status in this case, the Federal

Public Defender is hereby **APPOINTED** to represent the defendant.

Should this case proceed before a United States District Judge, the appointment shall

remain in effect until terminated or a substitute attorney is appointed.

SIGNED this 28th day of July, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| vs. | § | NO:  AU:22-M -00665(1) |
| | § | |
| (1) Jesus Estrada-Campuzano | § | |

## ORDER REGARDING FINANCIAL STATUS

The defendant appeared in this Court this day and asked the Court to appoint counsel. Because the defendant has testified under oath or otherwise satisfied the Court after appropriate inquiry that the defendant (1) is financially unable to employ counsel and (2) does not wish to waive counsel, and because the interests of justice so require, the Court has appointed counsel to represent the defendant in this case.

The defendant is advised that he may be required to reimburse the Government for the costs of appointed counsel on completion of the case. IT IS THEREFORE ORDERED that on any finding of guilt as to these current charges, the U.S. Probation Office is instructed to make financial inquiries of the defendant to determine if the defendant can repay the costs of court-appointed counsel. The U.S. Probation Office shall report its findings to the judicial officer assigned to the case before any sentencing.

**SIGNED** on July 28, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| vs. | § | NO:  AU:22-M -00665(1) |
| | § | |
| (1) Jesus Estrada-Campuzano | § | |

## ORDER OF TEMPORARY DETENTION UNDER 18 U.S.C. § 3142(d)

At the time of the alleged offense, the defendant was not a United States citizen or a person lawfully admitted for permanent residence, or, alternatively, the defendant was on release pending trial for a state or federal felony; on release after conviction for any type of offense, state or federal; or on probation or parole. This court finds that the defendant, if released, may flee or pose a danger to another person or the community.

**IT IS ORDERED:** The defendant must be detained temporarily under 18 U.S.C. § 3142(d) until August 11, 2022. I further order that a ☒ Detention hearing and ☒ a Preliminary hearing be held on **Thursday, August 11, 2022 at 10:00 A.M. before the Honorable Mark Lane**, in **Courtroom No. 8** on the **7 Floor** of the United States Courthouse, 501 West Fifth Street, Austin, Texas 78701.

The attorney for the government is directed to notify the appropriate court, probation or parole officer, state or local law enforcement officer, or the United States Citizenship and Immigration Services so that a detainer may be placed on the defendant or custody may be transferred. If no action is taken by the above date, the defendant must be brought before this court on that date for further proceedings.

If the defendant chooses to waive hearing(s), a written waiver (attached) **must be signed by defendant and defendant's counsel and filed by 4:00 p.m. the day before scheduled hearing**.

July 28, 2022

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

United States of America

v.                                      Case Number:  AU:22-M -00665(1)

(1) Jesus Estrada-Campuzano

## DEFENDANT'S WAIVER OF DETENTION HEARING

Defendant, (1) Jesus Estrada-Campuzano, files this waiver in response to the Order of Temporary Detention Hearing which was issued by the Court.  After further investigation, Defendant wishes at this time to waive the right to a detention hearing, subject to their right to bring a motion concerning detention at a later date.


                                        Respectfully submitted,

_____
*Defendant*

_____              _____
*Date*                                  *Attorney for Defendant*


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was delivered to the Assistant United States Attorney on the _____ day of _____, 20 _____ .


                                        _____

                                        *Attorney for Defendant*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

United States of America

v.                                                    NO:   AU:22-M -00665(1)

(1) Jesus Estrada-Campuzano

## WAIVER OF A PRELIMINARY HEARING

I understand that I have been charged with an offense in a criminal complaint filed in this court, or charged with violating the terms of probation or supervised release in a petition filed in this court. A magistrate judge has informed me of my right to a preliminary hearing under Fed. R. Crim. P. 5.1, or to a preliminary hearing under Fed. R. Crim. P. 32.1.

I agree to waive my right to a preliminary hearing under Fed. R. Crim. P. 5.1 or Fed. R. Crim. P. 32.1.

Date: _____

_____
Defendant's signature

_____
Signature of defendant's attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

JUL 2 8 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

United States of America

vs.

(1) Jesus Estrada-Campuzano

§
§
§
§
§

NO:  AU:22-M -00665(1)
*Original Case Number*:
*22-804-M(NJ)*
*Original District/Division*:
**Eastern District of Wisconsin,**
**Milwaukee Division**

### REPORT OF PROCEEDINGS UNDER RULES 5(c)(3) and 5.1
### AND ORDER ENTERED THEREON

The defendant is charged in the above-referenced district with the offense **21 US.C.841(a)(1) & (b)(1)(C) Possession with intent to distribute and distribution of a controlled substance; 21 U.S.C. 846 conspiracy to distribute 500g of cocaine.** Having been arrested in this district on a warrant issued on that/those charge(s), he/she appeared before me for proceedings as follows:

---

**Rule 5(c)(3)    Transfer**

☑ The government has produced a copy of the warrant, and

☑ The Court finds that the person before the Court is the defendant named in the indictment, information or warrant because:

  ☑ The defendant waived identity hearing.

  ☐ An identity hearing was conducted, and the defendant's identity was established.

☐ The Court finds, based on the evidence presented during an identity hearing, that the person before the Court is **NOT** the defendant named in the indictment, information, or warrant.

---

**Rule 5.1:    Preliminary Hearing**

☐ No preliminary hearing is necessary because the defendant is charged by indictment.

☐ The defendant waived a preliminary hearing.

☐ The defendant elected to have a preliminary hearing in the district where the prosecution is pending.

☐     The defendant elected to have a preliminary hearing in this district, and based on the evidence presented during the hearing, the Court finds that:

       ☐     There is probable cause to believe that the defendant committed the offense(s) charged.

       ☐     There is **NOT** probable cause to believe that the defendant committed the offense(s) charged.

---

**Rule 5(d)(3)**    **Detention Hearing**

☐     No detention hearing is necessary because the government did not move to detain the defendant.

☐     The defendant waived a detention hearing.

☐     The defendant elected to have a detention hearing in the district where the prosecution is pending.

☐     The defendant elected to have a detention hearing in this district, and based on the evidence presented during the hearing, the Court finds that:

       ☐     The defendant should be detained.

       ☐     The defendant should be released on bond.

---

## ORDER ENTERED ON THE FOREGOING REPORT

TO: UNITED STATES MARSHAL

☐     You are commanded to transfer the above-named defendant forthwith to the district in which he/she is charged and there deliver him/her to the United States Marshal for that district or to some other officer authorized to receive him/her.

☐     It is ORDERED that this defendant be released from custody on bond pending further proceedings.

☐     It is ORDERED that this defendant be discharged.

DATE: July 28, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



**FILED**

JUL 2 9 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| vs. | § | NO: AU:22-M -00665(1) |
| | § | |
| (1) Jesus Estrada-Campuzano | § | *Charging District's Case No.: 22-804M(NJ)* |

**Waiver of Rule 5 & 5.1 Hearing**
(Complaint/Information/Indictment)

I understand that I have been charged in another district, the Eastern District of Wisconsin, Milwaukee Division.

I have been informed of the charges and of my rights to:

(1) retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2) an identity hearing to determine whether I am the person named in the charges;

(3) production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4) a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5) a hearing on any motion by the government for detention;

(6) request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

( ) an identity hearing and production of the warrant.

( ) a preliminary hearing.

( ) a detention hearing.

( ✓ ) an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district. I request that any preliminary or detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

_____
(1) Jesus Estrada-Campuzano, *Defendant*

_7/29/22_
*Date*

_____
*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

United States of America §
§
vs. §                                    NO:  AU:22-M -00665(1)
§
(1) Jesus Estrada-Campuzano §            Charging District's
§                                        Case No.   22-804M(NJ)
§
§
§

**COMMITMENT TO ANOTHER DISTRICT**

The defendant has been ordered to appear in the ___Eastern___ District of ___Wisconsin, Milwaukee Division___ .

The defendant may need an interpreter for this language: _____Spanish_____ .

The defendant: ☐ will retain an attorney.

☒ is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant.  The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled.  The clerk of this district must promptly transmit the papers and any bail to the charging district.

07/29/2022

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE